UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LU AUNG,

Petitioner,

v.

WARDEN, Buffalo Federal Detention Center, et al.,

Respondents.

---

26-CV-1862-LJV
DECISION & ORDER

The petitioner, Lu Aung, was arrested on August 18, 2026. Docket Item 5 at 1. Although he "was issued and served with a Form I-862, Notice to Appear ('NTA')[,] on the day of his arrest[,] . . . that NTA was later rejected for legal insufficiency." *Id.* The legally valid NTA was not issued until almost a week later, on August 24, 2026, and was not filed with the immigration court until August 25, 2026. *Id.* Based on that timeline, this Court found Aung's arrest to be invalid and ordered him immediately released. Docket Item 6. The Court now writes to explain its reasons.

The NTA "is the immigration version of a 'charging instrument'" and "begins the removal process." *Loaeza v. Bausch*, 2026 WL 2150155, at *1 (W.D.N.Y. July 27, 2026) (quoting *Yeleshev v. Larocco*, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026)); *see also* Docket Item 5-1 at 13 (NTA's stating that "[t]his notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings"). Federal regulations provide that "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, the [noncitizen] may be arrested and taken into custody under the authority of Form I-

200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1). And the relevant statute similarly states that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained *pending a decision* on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added)).

Based on this statutory and regulatory language, United States District Judge Meredith A. Vacca has held that "without a valid NTA in place, removal proceedings are not pending, and [the government has] no authority to make an arrest or effectuate detention [under section] 1226(a)." *Loaeza*, 2026 WL 2150155, at *1. As a result, Judge Vacca found that a petitioner arrested before a valid NTA is issued "must be released from custody." *Id.* at *2. And other courts have reached similar conclusions. *See, e.g.*, *Meza v. Francis*, 2026 WL 1734903, at *2 (E.D.N.Y. June 16, 2026) (ordering immediate release because the "government did not dispute that the Form I-200 was issued before any NTA was issued," and "there is no leeway; if ICE wants to use a warrant, it must have a valid NTA in place") (quoting *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 409 (E.D.N.Y. 2026)); *Yeleshev v. Larocco*, 2026 WL 1353806, at *8 (E.D.N.Y. May 14, 2026) (ordering immediate release because of "the failure to initiate removal proceedings before or at the time of effectuating [the petitioner]'s arrest, and the use of an I-200 arrest warrant that was legally invalid"); *Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 333 (E.D.N.Y. 2026) (holding that "the authority to issue administrative arrest warrants emanates from a pending removal proceeding—which is initiated by the

issuance of an NTA"). This Court now joins that chorus and finds that an arrest prior to the issuance of a valid NTA is illegal,[1] and the remedy is immediate release.[2]

This Court acknowledges that nothing in this order prevents ICE from immediately taking Aung back into custody now that a valid NTA has been issued. But as this Court has observed before, "due process is not an aspirational goal and requiring it for all is not subject to whim or convenience." *Last Name Unknown v. Ball*, 2026 WL 2096666, at *4 (W.D.N.Y. July 21, 2026). What is more, arresting individuals without following the applicable procedure results in their detention without the process that is due. *See id.* "And if there is no consequence for the respondents' failure to [follow the required regulatory and statutory procedures], what is to stop them from grabbing someone off the street first and checking whether they had the authority to do so later?" *See id.* Requiring ICE to wait to arrest someone until a valid NTA has been issued prevents such violations of due process.

---

[1] The government reads *Loaeza* as requiring "that in order for an arrest to be valid, the NTA must be *filed* with the immigration court prior to ICE making an arrest." Docket Item 5 at 1. In *Loaeza*, Judge Vacca found that "the NTA's generation (occurring hours after Mr. Loaeza's arrest), service on Mr. Loaeza (occurring five days after his arrest per the signed certificate of service thereon), and the NTA's filing with the EOIR (occurring more than a week after Mr. Loaeza's arrest) all occurred after Mr. Loaeza was arrested." 2026 WL 2150155, at *2 (emphasis omitted). It is not clear to this Court that *Loaeza* reached the question of whether the *issuance* of an NTA is enough. But in any event, based on the regulations, this Court finds that the issuance of a valid NTA is sufficient to trigger the statutory authority to detain a noncitizen "pending a decision on whether [the noncitizen] is to be removed from the United States." *See* 8 U.S.C. § 1226(a)

[2] Because a legally valid NTA was not issued in this case until days after Aung was arrested, the Court need and does not reach whether there is some de minimus amount of time after the arrest that the NTA could be issued and still be considered "[a]t the time of issuance of the [NTA]." *See* 8 C.F.R. § 1236.1(b)(1).

For all those reasons, this Court finds that because Aung was arrested prior to the issuance of a valid NTA, he is entitled to immediate release.

SO ORDERED.

Dated: November 10, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE